UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| JOSHUA ARCENEAUX | CIVIL ACTION NO. 05-0989 |
| | CRIMINAL ACTION NO. 03-50054-02 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE HORNSBY |

_____

## MEMORANDUM RULING

Before this Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Record Document 76], filed on behalf the petitioner, Joshua Arceneaux. Arceneaux seeks to have his sentence vacated based on the following grounds: (1) *ex parte* communications between the government and the Court; (2) ineffective assistance of counsel; (3) misapplication of the guidelines; and (4) Booker error. Id. For the reasons discussed herein, Arceneaux's Motion is **DENIED**.

## FACTUAL BACKGROUND

On May 29, 2003, a federal grand jury returned a two count indictment against Joshua P. Arceneaux ("Arceneaux") and Anthony A. Kellogg ("Kellogg"), charging them with conspiracy to distribute 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 846 (Count One), and possession with intent to distribute 5 grams or more of methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2 (Count Two). [Record Document 1 (Indictment)]. On August

29, 2003, pursuant to a written plea agreement, Arceneaux pled guilty to Count One. [Record Document 35].

Arceneaux's total offense level was 31[1] and his criminal history category was I, with a guideline sentence range of 108 to 135 months imprisonment. The statutory range was 120 to 135 months, with 120 months being the mandatory minimum. Prior to sentencing, the government filed a Motion for Departure from the Sentencing Guidelines Pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), informing the Court that Arceneaux provided substantial assistance to the Government in the investigation and requested that his sentence reflect his assistance to the Government. [Record Document 52]. On June 10, 2004, the Court departed from the sentencing guidelines and statutory range. Arceneaux was sentenced to a term of imprisonment of 96 months and supervised release for a period of five years. [Record Document 53]. No appeal was taken.

On June 8, 2005, Arceneaux filed a a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Record Document 76]. He contends his sentence should be vacated and that he should be resentenced because the judge should have recused himself after an *ex parte* meeting with the government, he was denied his constitutional right to due process and the right to be present at a critical stage of the proceedings as a result of the *ex parte* meeting, his counsel failed to object to the *ex parte* communication or move for a recusal, the two-point increase for his role in the offense should not have been added to his offense level, and his sentence was imposed under a mandatory

---

[1] Arceneaux's total offense level included a two level role increase as an organizer or leader of joint criminal activity involving less than five participants pursuant to U.S.S.G. § 3B1.1(c).

guideline system in violation of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## LAW AND ANALYSIS

**A.     Claims Not Cognizable Under 28 U.S.C. § 2255**

After conviction and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), quoting United States v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post conviction collateral attacks. To the contrary, a final judgment commands respect." Frady, 456 U.S. at 164-65, 102 S.Ct. at 1593. Consequently, issues that can be presented in a motion filed under 28 U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude. Shaid, 937 F.2d at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant has issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them. In order to raise an issue for the first time on collateral review, a defendant must show both "cause" for his procedural default and

"actual prejudice" resulting from the error. Id. at 168. To establish "cause," defendant must show some external impediment prevented him from raising the claim on direct appeal. See U.S. v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, he must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233.

A narrow exception to the "cause and actual prejudice" requirement exists in extraordinary cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 232. The Supreme Court has emphasized that this exception is limited to only those cases involving "manifest miscarriages of injustice" that would result in the continued incarceration of an innocent person.[2] Id., citing Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2649, 91 L.Ed.2d 434 (1986). Because Arceneaux does not contend that he is "actually innocent" of the crime, the Court need only determine whether he has alleges claims that are constitutional or jurisdictional in nature and whether he has established the requisite "cause and actual prejudice."

With respect to his claims regarding the *ex parte* communication between the Court and the Government, the calculation of his total offense level, and the alleged Booker violation, Arceneaux admits that these issues were not raised on direct appeal.

---

[2]To establish "actual innocence" in a case where the petitioner entered a plea of guilty, he must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998), citing Schlup v. Delo, 513 U.S. 298, 327-28, 115 S.Ct. 851, 867-68, 130 L.Ed.2d 808 (1995).

Nevertheless, Arceneaux argues his counsel failed to advise him of any ground for appeal and that his counsel's "ineffective assistance" is sufficient to establish "cause" for his procedural default and "actual prejudice" resulting therefrom. See United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995) (absent unusual circumstances, ineffective assistance of counsel may be sufficient to establish the cause and prejudice necessary to overcome a procedural default). Assuming *arguendo* that Arceneaux's alleged failure is sufficient to establish "cause" for his procedural default, the Court must now determine whether Arceneaux was "actually prejudiced" by his counsel's actions.

### 1.     *Ex Parte* Communications

At the beginning of Arceneaux's sentencing hearing, the trial judge informed the defendant and his counsel that he had engaged in an *ex parte* conversation with the Government:

> I want to say on the record that I did have an ex parte conversation with the Government's prosecutor yesterday to express to him my dismay that the dealer, Mr. Arceneaux, was on the books for sentencing under the guidelines, for an amount of months less than those months ascribed by those guidelines to the lesser person in the group of this particular offense. And we had a fully and complete discussion about how the guidelines work in such a circumstance.

[Sentencing Transcript, p. 3].

As a result of the *ex parte* meeting between the Court and the Government, Arceneaux claims he was denied his constitutional right to due process and that he was denied his constitutional right to be present at all "critical stages" of the proceeding. See Record Document 76. After extensive research, the Court has found no Fifth Circuit law that would support Arceneaux's arguments.

### a. Due Process

A basic requirement of the Due Process Clause of the Fourteenth Amendment is a "fair trial in a fair tribunal." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed.2d 942 (1955). To prevent the probability of unfairness, the Court should generally refrain from *ex parte* communications with a party and his or her counsel. But there are occasions where *ex parte* communications inadvertently occur and expose a judge to matters that are not properly before the Court. United States v. MMR Corp. (LA), 1991 WL 19067, *4 (E.D.La. Feb. 11, 1991). While such communications may violate certain ethical, professional, and/or judicial codes of conduct, due process does not require a judge to recuse himself from every case in which an *ex parte* communication has occurred. Rather, recusal is required only where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable," the judge engaged in a dual role as both investigator and adjudicator, or where the complainant shows that he was otherwise "prejudiced" by such communications. See Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); Wesbrook v. Thaler, — F.3d —, 2009 WL 3259052, *9-12 (5th Cir. Oct. 13, 2009); see also, United States v. Minsk, 963 F.2d 870, 874 (6th Cir. 1992) (noting that there are circumstances where an *ex parte* communication may be "overlooked").

Arceneaux appears to argue that prejudice should be presumed from the *ex parte* communication between the Court and the Government because the meeting occurred without a court reporter present and there is no record to determine exactly what was said by either the Court or the prosecutor. At the start of the sentencing hearing, however, the trial judge immediately informed Arceneaux and his counsel of the *ex parte* meeting and

that he had inquired as to why a downward departure motion had been filed as to Arceneaux but not Kellogg. The trial judge "thought that the lesser implicated person in these methamphetamine transactions was Kellogg, and the greater participant was Arceneaux." [Sentencing Tr., pp. 7-8]. The prosecutor stated on the record that he had explained to the judge that the reason a downward departure motion was filed on behalf of Arceneaux and not Kellogg "was because [the Government] did not believe Mr. Kellogg was fully truthful," and "that he attempted to protect an individual in Dallas, another source of supply." [Sentencing Transcript, p. 4]. The prosecutor also stated on the record that he informed the Court during the meeting:

> [T]hat since the beginning of our relationship with Mr. Arceneaux at the time of his arrest, he has cooperated with the Government. We believe that he has cooperated truthfully and fully with the Government, and has so since the inception. That's the reason for the filings of the motions for downward departure.
>
> The cooperation he gave led to the arrest and prosecution of a source of supply from Dallas, Texas. That individual has been brought to the Western District of Louisiana, and he too has pled guilty and is awaiting sentence.

[Sentencing Tr., pp.2-3].

The statements made by the judge and the prosecutor at the hearing demonstrate the *ex parte* communication in no way acted to the prosecution's benefit or to Arceneaux's detriment. To the contrary, the *ex parte* conversation served to benefit Arceneaux as the Government was able to explain to the judge why Arceneaux was worthy of a reduction in sentence. In the absence of any showing of actual bias on the part of the Court or actual prejudice to the defendant, the Court does not believe the *ex parte* communication in this case was sufficient to undermine confidence in the impartiality of the proceedings. See

e.g., United States v. Earley, 746 F.2d 412 (8th Cir. 1984) (holding that while the submission of an *ex parte* trial brief was improper, the lack of prejudice rendered the error harmless); United States v. Baraban, 599 F.Supp. 1171, 1183 (S.D.Fla. 1984) (holding that the defendant was not prejudiced where the Court immediately put on the record the substance of what had occurred). Accordingly, Arceneaux has failed to establish a violation of his due process rights.

### b. Right to be Present at "Critical Stages" of the Proceeding

A criminal defendant has a right to be present at all "critical stages" of a federal criminal prosecution. U.S. Const. Amends. V, VI; Fed. R. Crim. P. 43. As the Supreme Court has oft stated, the Constitution guarantees a criminal defendant to be present at those proceedings where "his presence has a relation, reasonably substantial, to the fulness of the his opportunity to defend against the charge." United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985), quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); see also, Caretta v. California, 422 U.S. 806, 819 n.15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("It is now accepted...that an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.").

Arceneaux claims the *ex parte* communication between the Court and the Government violated his constitutional right to be present. But the mere occurrence of an *ex parte* conversation between a trial judge and a prosecutor does not constitute a deprivation of any constitutional right. See Gagnon, 470 U.S. at 526, 105 S.Ct. at 1484; Rushen v. Spain, 464 U.S. 114, 125-26, 104 S.Ct. 453, 459, 78 L.Ed.2d 267 (1983). A defendant's absence from such a proceeding violates his constitutional rights only "to the

extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. (quoting Snyder, 291 U.S. at 108, 54 S.Ct. at 333).

Under the circumstances, the presence of Arceneaux and his counsel at the *ex parte* meeting was not required to ensure fundamental fairness. Even if the Court were to find that Arceneaux was deprived of his right to be present at a "critical stage" of the proceedings, such error was harmless. See United States v. Stratton, 649 F.2d 1066, 1080 (5th Cir. 1981) (The abridgment of the right to be present at trial constitutes harmless error unless there is a reasonable probability of prejudice from the defendant's absence.). As previously discussed, Arceneaux was not prejudiced in any manner from the *ex parte* communication. Rather, the *ex parte* conversation served to benefit Arceneaux. See, infra. Consequently, Arceneaux has failed to establish a violation of his constitutional right to be present at a "critical stage" of the proceedings.

### 2. Calculation of Total Offense Level

At the sentencing hearing, the prosecutor stated on the record that, during the *ex parte* communication with the Court, he provided further information to the Court regarding the roles of Arceneaux and Kellogg in the offense:

> . . . I would like to clarify something about the Government's belief concerning Mr. Kellogg, who has been termed "the mule" in this instance. I spoke with DEA Agent Michelle Sears today, and she informed me that what I did believe to be true, is that Mr. Kellogg is the individual who had the hook-ups in Dallas; he knew the individuals in Dallas that had the drugs. What Mr. Arceneaux did was supplied [sic] the money. They weren't his friends that he sent this mule to. The deal was put together by Mr. Kellogg. Mr. Arceneaux, of course, had the funds to fund it. When they returned to Shreveport, Mr. Kellogg got some of the drugs and sold them to his friends; and then also Mr. Arceneaux sold drugs as well. . . .

[Sentencing Tr., pp. 3-4].

Based on this information, Arceneaux contends the Court erred in applying the two-level enhancement for his role in the offense because the prosecutor's statements show that he did not qualify as an "organizer or leader of criminal activity" under U.S.S.G. § 3B1.1. If the Court had not applied the two-level enhancement, he would have been eligible for the safety valve provision[3] and would have received an additional two-point reduction of the base offense level under U.S.S.G. § 2D1.1(b)(6). Thus, the guideline range from which the Court would have departed would have been lower.

The Court finds Arceneaux's argument to be completely speculative in nature and without merit. Comment (4) to U.S.S.G. § 3B1.1 expressly states that there can be "more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." Further, "[a]n upward departure may be warranted . . . in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised enough management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1, cmt. 2. Regardless of whether Kellogg's conduct can be deemed "more culpable," it is undisputed that Arceneaux supplied the funds necessary to purchase drugs in Dallas and was also selling drugs, and therefore qualified as an "organizer or leader" of criminal activity under § 3B1.1.

In addition, a review of the transcript from the sentencing hearing reveals the effect the information may have had on the presentence investigation report would have had no

---

[3]The safety valve provision, U.S.S.G. § 5C1.2, provides that the Court may impose a sentence without regard to any statutory minimum sentence, if the Court finds that the defendant meets the criteria set forth in 18 U.S.C. § 3553(f)(1)-(5).

impact on the sentence. Prior to sentencing, the Government filed a motion under 18 U.S.C. § 3553(e) informing the Court that Arceneaux provided substantial assistance to the Government and requesting the Court to impose a sentence below the statutory minimum of 10 years. [Doc. 52]. In sentencing the defendant, the Court was not concerned with the guideline range but only whether he should depart below the minimum sentence: "Mr. Arceneaux, I was not inclined to go beneath the minimum sentence. The fact that you are a first offender and the fact that Mr. Hathaway filed the particular motions that he filed caused me to cut two years off of your sentence. *But that's the limit*." [Sentencing Tr., p.16 (emphasis added)]. Thus, regardless of whether Arceneaux's total offense level and guideline range had been lower, the sentence would have been the same.

    3.    **Booker Violation**

In United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the United States Supreme Court held that the Sixth Amendment right to trial by jury is violated under a mandatory guidelines system if a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury. The Supreme Court determined the appropriate remedy was to render the guidelines advisory, with each sentence to be imposed under a standard of "reasonableness."

Arceneaux claims that, because he was sentenced in 2004 under the same sentencing scheme that the Supreme Court invalidated in Booker, he is entitled to be resentenced. However, this argument is foreclosed as the Fifth Circuit has made it clear that Booker does not apply retroactively on collateral review to § 2255 motions. See United States v. Gentry, 432 F.3d 600, 604 (5th Cir. 2005) (holding that Booker does not

fit into either of the two Teague exceptions to non-retroactivity); In re Elwood, 408 F.3d 211, 213 (5th Cir. 2005) (recognizing that the Supreme Court has not rendered any decision or combination of decisions that dictates retroactivity of Booker). Consequently, Arceneaux's claim that his sentencing violated the Sixth Amendment cannot be considered by this Court.

**B.    Ineffective Assistance of Counsel**

The general ruling prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693 (2003). The procedural-default rule is a doctrine employed by the courts "to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id. Requiring a criminal defendant to bring ineffective assistance of counsel claims on a direct appeal promotes neither of these objectives. Moreover, a claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations. United States v. Alanis, 88 Fed. Appx. 15, 19 (5th Cir. 2004). Thus, a criminal defendant is properly permitted to bring ineffective assistance of counsel claims in a collateral proceeding under § 2255, regardless of whether such claims could have been raised on direct appeal. Id.

To prevail on his claims of ineffective assistance of counsel, Arceneaux must prove (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the Strickland analysis, Arceneaux

must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., 466 U.S. at 687, 104 S.Ct. at 2064. The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id., 466 U.S. at 690, 104 S.Ct. at 2066. Under the second prong of the Strickland test, the defendant must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

Arceneaux asserts he received ineffective assistance of counsel because his counsel failed to object to the *ex parte* communication between the Court and the Government or file a motion for recusal, and failed to object to the application of the two-level enhancement under U.S.S.G. § 3B1.1. Regardless of whether his counsel's actions were "objectively reasonable," the Court has already determined that Arceneaux was not prejudiced by the *ex parte* communication or the application of the two-level enhancement. See, infra. In the absence of prejudice, Arceneaux cannot establish that he was denied effective assistance of counsel.

## CONCLUSION

The Court finds Arceneaux's claims concerning the *ex parte* communication between the Court and the Government, application of the two-level enhancement under

U.S.S.G. § 3B1.1, and alleged <u>Booker</u> violation are without merit. In addition, Arceneaux failed to establish that he was prejudiced by his counsel's assistance. Accordingly, Arceneaux's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Record Document 76] is hereby **DENIED.**

    **THUS DONE AND SIGNED** in Shreveport, Louisiana on this 28th day of October, 2009.

                                                              S. MAURICE HICKS, JR.
                                                         UNITED STATES DISTRICT JUDGE